UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,                          Case No. 14-cr-20631
                                                Hon. Matthew F. Leitman

v.

JONATHAN BAEZ,

     Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (ECF #18)

## INTRODUCTION

On September 16, 2014, Defendant Jonathan Baez ("Baez") was driving on Interstate-94 ("I-94") in Van Buren County when a Michigan State Trooper pulled him over for driving under the posted speed limit.  During initial questioning of Baez, the officer detected the odor of marijuana coming from Baez's car.  The officer subsequently obtained Baez's consent to search the vehicle, and the officer discovered a hidden compartment filled with drugs and weapons.  Baez now challenges the search of his car and moves to suppress the evidence discovered during that search (the "Motion to Suppress").  (*See* ECF #18.)   For all of the reasons stated below, the Court **DENIES** the Motion to Suppress.

## FACTUAL FINDINGS

The Court held an evidentiary hearing on the Motion to Suppress on March 6, 2015. (*See* Transcript, ECF #21.) Baez was present for the hearing, but he did not testify. Based on all of the evidence presented at the hearing, the Court makes the following factual findings:

1.  On September 16, 2014, at approximately 12:20 p.m., Baez was driving a Toyota Highlander eastbound on I-94, in Van Buren County. (*See* Tr. at 8-9, Pg. ID 85-86.)[1]

2.  At this same time, Michigan State Trooper Brian Bierema ("Trooper Bierema") was on patrol in the area where Baez was driving. (*See* Tr. at 7, Pg. ID 84.)

3.  Trooper Bierema works as part of a canine unit and was accompanied on his patrol by his assigned police dog, Hank. (*See id.* at 5-6, Pg. ID 82-83.) Hank has received specialized training in recognizing the order of narcotics and marijuana, and Hank signals an alert when he detects such odors. Trooper Bierema received training in how to handle Hank and how to recognize his alert signal. Hank and Trooper Bierema have passed annual evaluations concerning their ability

---

[1] The Court provides supporting citations as examples of material that support the Court's findings. By giving a specific citation, the Court does not mean to imply that the cited evidence is the sole support for a particular finding. The Court's findings are based upon the totality of the evidence presented at the hearing.

to accurately detect the odor of narcotics and marijuana. (*See id.* at 6-7, Pg. ID 83-84.)

4.     During his patrol, Trooper Bierema observed Baez travelling on I-94 at a speed of 49 miles per hour. (*See id.* at 11, Pg. ID 88.)

5.     The minimum speed limit on the relevant section of I-94 was 55 miles per hour. (*See id.*)

6.     Trooper Bierema stopped Baez's car because Baez was in "violation of [the] basic speed law" (i.e., Baez was driving under the posted speed limit). (*Id.* at 12-13, Pg. ID 89-90.)

7.     After pulling Baez's car to the side of the road, Trooper Bierema approached Baez's passenger-side window, identified himself, and asked for Baez's driver's license and registration. (*See id.* at 13, Pg. ID 90.)

8.     As Trooper Bierema initially began to speak with Baez, Trooper Bierema detected the odor of marijuana coming from Baez's vehicle. (*See id.* at 14, Pg. ID 91.)  Not more than three minutes elapsed between the time Trooper Bierema first stopped Baez and the time Trooper Bierema detected the smell of marijuana as he spoke with Baez. (*See id.* at 35, Pg. ID 112.)

9.     After completing his initial questioning of Baez, Trooper Bierema returned to his police car to determine if Baez's license and other paperwork was valid. (*See id.* at 14-17, Pg. ID 91-94.)

10.     While Trooper Bierema was in his police car, he made the decision to remove Baez from his vehicle as a result of the marijuana odor he detected.  (*See id.* at 18, Pg. ID 95.)

11.     While still in his car, Trooper Bierema used an in-car messaging system to request that a second officer come to the scene.  Two additional troopers eventually joined Trooper Bierema on the scene.  (*See id.*)

12.     Trooper Bierema then returned to Baez's vehicle and asked Baez to step out of his car.  (*See id.* at 19, Pg. ID 96.)

13.     Baez exited his vehicle, and Trooper Bierema asked him "some questions regarding the odor of marijuana."  (*Id.*)

14.     In response to Trooper Bierema's questions, Baez admitted to smoking marijuana earlier in the day.  (*See id.*)

15.     Baez did not appear intoxicated at the time he was speaking with Trooper Bierema.  (*See id.* at 20, Pg. ID 97.)

16.     During this discussion, which occurred about eight minutes into the traffic stop, Trooper Bierema asked Baez for consent to search Baez's car, and Baez granted such consent.  (*See id.* at 24, Pg. ID 101; *see also id.* at 37-38, Pg. ID 114-115.)

17.     Trooper Bierema then had Hank, his canine partner, sniff the outside of Baez's vehicle.  (*See id.* at 20-21, Pg. ID 96-97.)

18.     Hank "gave a positive indication for the odor of narcotics." (*Id.* at 21, Pg. ID 97.)

19.     After Hank alerted Trooper Bierema to the presence of narcotics, Trooper Bierema and his fellow officers began searching Baez's car by hand. (*See id.* at 24, Pg. ID 101.)

20.     During this hand search, the officers "found additional indicators" of marijuana use and related paraphernalia, including a vaporizer kit and items used to conceal the presence of drugs. (*Id.* at 24-25, Pg. ID 101-102*; see also id.* at 67, Pg. ID 144.)

21.     One of the other officers also found a wire in the vehicle that appeared to be "installed after the vehicle came to market." (*Id.* at 26-27, Pg. ID 103-104.)

22.     The wire was suspicious to Trooper Bierema because its protective sheath had been removed. (*See id.* at 27, Pg. ID 104.) In addition, "the route [of the wire] went to a location where there was no amplifier for an aftermarket stereo and it went underneath the seat [where the officers] lost sight of it." (*Id.* at 82, Pg. ID 159.)

23.     Based upon his experience with similar wires found in other vehicles, Trooper Bierema believed that the wire may have been connected to a hidden compartment within Baez's vehicle. (*See id.*)

24.    The officers did not find any narcotics in Baez's vehicle during their roadside search.   However, at the conclusion of the search, Trooper Bierema remained convinced that the vehicle contained illegal drugs.   He based that conclusion on, among other things, the existence of the suspicious wire and the other drug paraphernalia found in the vehicle.  (*See id.* at 27-28, Pg. ID 104-105.)

25.    Based on the existence of these "additional indicators," Trooper Bierema made the decision to have Baez's car towed to a local repair shop in order to conduct a more thorough search away from the side of the road.  (*See id.* at 28, Pg. ID 105.)

26.    Baez's car was then towed to Rob's Tire and Auto, an auto repair shop in close proximity to the location where Baez was pulled over.  (*See id.*)

27.    At the auto repair shop, the officers used a scope containing a camera in order to search areas of Baez's car that were unable to be seen with the naked eye.  (*See id.* at 28-29, Pg. ID 105-106.)

28.    The scope confirmed that there was a hidden compartment within the car, and that the compartment contained United States currency.  (*See id.* at 29, Pg. ID 106.)

29.    At that point, Trooper Bierema read Baez his *Miranda* rights.  (*See id.*)

30.     After Bierema read Baez his *Miranda* rights, Baez "agreed to show [the officers] how to open up the [hidden compartment]."  (*Id.*)

31.     With Baez's assistance, Trooper Bierema and the other officers were able to open the hidden compartment. (*See id.* at 30, Pg. ID 107.)

32.     The hidden compartment included "approximately $5,000 in U.S. currency," two handguns, "some high-capacity magazines," and "approximately 120 grams of heroin."  (*Id.*)

33.     After the officers opened the hidden compartment, Baez was placed under arrest for drug possession.  (*See id.* at 85, Pg. ID 162.)

## ANALYSIS

In the Motion to Suppress, Baez seeks suppression of the evidence seized from his vehicle on three grounds:

- [Baez] contends that the stop of his vehicle violated the Fourth Amendment for lack of probable cause that a traffic violation occurred nor did the Troopers have reasonable suspicion of criminal activity.

- [Baez's] removal from the vehicle, the search and the detention violated the Fourth Amendment for lack of probable cause and reasonable suspicion of criminal activity.

- The warrantless search and seizure of [Baez's] vehicle was conducted without probable cause and was otherwise tainted by the illegal stop and detention violating the Fourth Amendment.

7

(Motion to Suppress at 2, ¶¶ 9-11, Pg. ID 57.)  The Court concludes that Baez is not entitled to relief on any of these three grounds.

## A.     The Stop and the Order to Exit the Vehicle

Trooper Bierema did not violate the Fourth Amendment when he stopped Baez.  As Baez properly acknowledges, "[a] police officer may legally stop a car when he has probable cause to believe that a civil infraction violation has occurred," (*Id.* at 6, Pg. ID 61) (citing *United States v. Sandford*, 476 F.3d 391, 394 (6th Cir. 2007)), and that is exactly what happened here.[2]  Trooper Bierema personally observed and recorded Baez driving his vehicle at a speed of 49 miles per hour on I-94. (Tr. at 11, Pg. ID 88.)  That speed is six miles per hour below the minimum required speed on the relevant stretch of I-94, and Trooper Bierema stopped Baez "for a violation of [the] basic speed law." (*Id.* at 11-12, Pg ID 88-89.)  Trooper Bierema had probable cause to stop Baez for committing a civil infraction, and thus the stop complied with the Fourth Amendment.

Nor did Trooper Bierema violate Baez's Fourth Amendment rights when he ordered Baez to exit his vehicle.  "[O]nce a motor vehicle has been lawfully detained for a traffic violation, [a] police officer[] may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of

_____

[2] *See also United States v. Winters*, 782 F.3d 289, 296 (6th Cir. 2015) ("It is well-established that where an officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment.") (internal quotation marks omitted).

unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U.S. 106, 111, n.6 (1977); *see also United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010) ("In the course of a stop premised on a traffic violation, police may instruct the driver or occupant to exit the vehicle").  After lawfully stopping Baez, Trooper Bierema was permitted to direct Baez to exit his vehicle.

## B.    The Extension of the Traffic Stop

A traffic stop "must…last no longer than is necessary to effectuate the purpose of the stop.'"  *Winters*, 782 F.3d at 296 (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).  "Once the original purpose of the traffic stop…has been completed, [a motorist] cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable and articulable suspicion that criminal activity was afoot."  *Id*. at 297 (internal quotation marks omitted.) "Whether an officer has reasonable, articulable suspicion of criminal activity is based on the totality of the circumstances presented to the officer.  This is an objective standard premised on specific facts that would lead a reasonable officer to suspect illicit activity."  *Id.* at 298 (internal quotation marks and citation omitted).

Trooper Bierema did not unlawfully extend the traffic stop of Baez.  Trooper Bierema smelled the odor of marijuana coming from Baez's vehicle well *before* he completed the original purpose of the traffic stop. (Tr. at 14, Pg. ID 91.)  In fact, he

9

smelled marijuana within minutes of his first approach to the stopped vehicle. That odor of marijuana, standing alone, gave Trooper Bierema the "reasonable suspicion" necessary to extend the traffic stop and further question Baez.[3]  Indeed, the United States Court of Appeals for the Sixth Circuit has held that "the smell of marijuana emanating from [a] vehicle constitute[s] a change of circumstances that suggest[s] [a suspect] [is] engaged in illegal activity, which authorize[s] further detention so the officers [can] investigate."  *United States v. Noble*, 364 Fed. App'x 961, 964 (6th Cir. 2010) (affirming denial of motion to suppress).  *See also United States v. Ivey,* 307 Fed. App'x 941, 942 (6th Cir. 2009) (smell of alcohol provided requisite suspicion to justify continued detention of motorist).

In fact, as explained below, the smell of marijuana not only justified the extension of the traffic stop, it also established probable cause for Trooper Bierema to search Baez's vehicle.  That probable cause further justified extending the stop in order to conduct and complete the search.

Baez asks the Court to hold that the extension of the stop was impermissible under *Rodriguez v. United States*, 135 S.Ct. 1609 (2015), *United States v.*

---

[3] At the evidentiary hearing, Trooper Bierema explained that upon his initial questioning of Baez, Baez's "facial expressions, the tone of his voice[,] and the general presence of what was said didn't seem authentic."  (Tr. at 16, Pg. ID 93.)  According to Trooper Bierema, this provided yet another reason justifying Baez's continued detention and the subsequent search of the vehicle.  (*See, e.g., id.* at 16-17, Pg. ID 93-94.)  The Court disagrees.  Trooper Bierema was unable to offer any persuasive or specific explanation as to how or why the expressions and tone were suspicious.

*Townsend*, 305 F.3d 537 (6th Cir. 2002), and *United States v. Richardson*, 385 F.3d 625 (6th Cir. 2004). Baez also relies on a recent decision granting a motion to suppress from this Court in *United States v. Warren*, 14-cr-20030. (*See* ECF #23.) These cases are readily distinguishable. In each of these decisions, the arresting officers (1) properly initiated a traffic stop but (2) wrongly extended the stop beyond its original, lawful purpose *without* reasonable suspicion of criminal activity. The Supreme Court and the Sixth Circuit have both disapproved of that practice. Here, in sharp contrast, long before Trooper Bierema completed the initial traffic stop, he had *both* "reasonable suspicion" of criminal activity *and* probable cause to search Baez's vehicle. Unlike the officers in the cases on which Baez relies, Trooper Bierema did not extend an already-completed routine traffic stop in an effort to develop a basis on which to search Baez's vehicle. Baez's cases thus do not support suppression of the evidence seized from Baez's vehicle.

## C.   The Roadside Search of the Vehicle

Trooper Bierema's warrantless roadside search of Baez's vehicle was justified on two independent grounds: probable cause and consent. The search therefore did not violate Baez's Fourth Amendment rights.

### 1.   Probable Cause Existed for the Roadside Search

As noted above, immediately after initiating the traffic stop, Trooper Bierema smelled marijuana coming from Baez's car. (*See* Tr. at 14, Pg. ID 91.)

The Sixth Circuit "has long recognized that the odor of marijuana emanating from a vehicle can establish probable cause to believe there is marijuana in the vehicle." *United States v. James*, 575 Fed. App'x 636, 639 (6th Cir. 2014). Likewise, that court has explained that "an officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search." *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002). And, of course, once an officer has probable cause to believe that a lawfully-stopped vehicle contains contraband, the officer may conduct a warrantless roadside search of the vehicle. *See United States v. Johnson*, 707 F.3d 655, 658 (6th Cir. 2013) ("[U]nder the automobile exception to the warrant requirement, an officer may search a readily mobile vehicle without a warrant if he has probable cause to believe that the vehicle contains evidence of a crime") (internal quotation marks omitted); *see also James*, 575 Fed. App'x at 639 ("Under the automobile exception to the warrant requirement, an officer may perform a warrantless search of a detained vehicle should the officer have probable cause to believe the vehicle contains contraband or evidence of criminal activity") (quoting *United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012). Thus, once Trooper Bierema detected the odor of marijuana, he had a lawful basis to conduct the warrantless roadside search of Baez's vehicle.

### 2.      Baez Provided Consent for the Roadside Search

The warrantless roadside search of Baez's car was justified by more than just the odor of marijuana that Trooper Bierema detected; it was lawful based upon Baez's valid consent.   Indeed, Baez correctly recognizes that a driver's consent may justify a warrantless search of a vehicle. (*See* Baez Supplemental Brief, ECF #22 at 4, Pg. ID 175.)  Here, Baez freely and voluntarily permitted a search of his vehicle.  (*See, e.g,* Tr. at 24, Pg. ID 101; *see also United States v. Coleman*, 458 F.3d 453, 459 (6th Cir. 2006) (concluding that defendant "'freely and voluntarily' consented [to search] when he authorized the police to search his car").)  Baez's consent authorized Trooper Bierema to conduct his roadside search.

Baez argues that his consent was not valid because Trooper Bierema did not expressly advise him that he had a right to withhold consent. (*See* Baez Supp. Br. at 4, Pg. ID 175.)  But Baez cites no authority for the proposition that consent is valid only if a police officer informs a suspect that he may refuse to consent, and the law is to the contrary.  *See, e.g., United States v. Thurman*, 525 Fed. App'x 401, 404 (6th Cir. 2013) ("While knowledge of the right to refuse to consent to a search is relevant, 'police do not have to inform an individual of his right to refuse to consent to a search'") (quoting *United States v. Collins*, 683 F.3d 697, 702 (6th Cir. 2012)).  And Baez has offered no other reason to question the validity and voluntariness of his consent.  He did not testify at the evidentiary hearing and has

13

not pointed to any circumstances that could render his consent to the roadside search invalid for any reason (such as providing evidence that his consent was coerced or that he did not understand his rights).  Moreover, the duration of the detention and questioning of Baez prior to his consent were reasonable.  Accordingly, the Court concludes that Baez's consent to the warrantless roadside search was valid, voluntary, and fully effective, and the search therefore did not violate Baez's Fourth Amendment rights.

**D.  The Towing of Baez's Vehicle to the Automobile Repair Facility and the Additional Search at That Facility**

Trooper Bierema acted lawfully when he had Baez's vehicle towed to the automobile repair facility in order to conduct a more thorough search.  Before having Baez's vehicle towed, Trooper Bierema and his colleagues found several items that provided additional probable cause to believe that the vehicle contained contraband.  For instance, they found multiple items that were "paraphernalia for using marijuana and concealing marijuana" (Tr. at 67, Pg. ID 144), including a vaporizing kit and a modified pill container.  (*See id.* at 25, Pg. ID 102.)  They also discovered a suspicious aftermarket wire installed in Baez's car that raised additional legitimate questions about whether contraband was hidden in a secret compartment.  (*See id.* at 25-27, Pg. ID 102-104.)  Moreover, Trooper Bierema's trained police dog Hank gave a positive indication that narcotics could be found in Baez's car.  (*See id.* at 21, Pg. ID 97.) These discoveries during the roadside search

14

– especially when coupled with Hank's positive alert – established probable cause to conduct a more detailed and invasive search of the vehicle.  It was reasonable for Trooper Bierema to conclude that such a search could not safely and effectively be accomplished at the roadside.

Indeed, Supreme Court precedent makes clear that Trooper Bierema was justified in having Baez's vehicle towed to the repair shop in order to conduct this search.  In *Colorado v. Bannister*, 449 U.S. 1 (1980), the Supreme Court explained that since its seminal vehicle search decision in *Carroll v. United States*, 267 U.S. 132 (1925), "warrantless searches [of vehicles] have been found permissible even when a car was searched after being seized and moved to a police station." *Id*. at 3 (citing *Texas v. White*, 423 U.S. 67 (1975) and *Chambers v. Maroney*, 399 U.S. 42 (1970)).  The Supreme Court explained that "[i]n each of these latter cases, the search was constitutionally permissible because an immediate, on-the-scene search would have been permissible." *Id*.  The *Chambers* decision, cited in *Bannister*, is especially relevant because in that case the Supreme Court said that it was not unreasonable for officers to move an automobile from a roadway to a police station to be searched because it was "impractical and perhaps not safe for the officers" to search the vehicle on the side of the road. *Chambers*, 399 U.S. at 52, n. 10.

Here, for all of the reasons explained above, Trooper Bierema had probable cause to conduct a thorough, invasive, immediate, and on-the-scene search of

Baez's vehicle as it sat on the shoulder of I-94. And, as in *Chambers*, it was safer and more practical for Trooper Bierema to move the vehicle to the auto repair facility to conduct the search. Under *Bannister* and *Chambers*, because Trooper Bierema had probable cause to conduct a thorough search of the vehicle on the scene, he had the additional authority to move the vehicle to a safer location to conduct such a search more efficiently and effectively.[4]

The decision of the United States Court of Appeals for the Sixth Circuit in *United States v. Castro-Perez*, 113 Fed. App'x 92 (6th Cir. 2004), further supports the conclusion that Trooper Bierema did not run afoul of the Fourth Amendment when he moved Baez's vehicle to the auto repair shop and conducted the more invasive search at that location. In *Castro-Perez*, a drug dog alerted police to the presence of drugs stored in the bumper of a vehicle that police had stopped along a highway. The officers moved the vehicle before searching it because they felt it would be unsafe to open the bumper and search the vehicle along the highway. The Sixth Circuit held that the officers did not violate the Fourth Amendment by

---

[4] Baez argues in his supplemental brief that regardless of whether he consented to the roadside search of his vehicle, he did not consent to have his car towed to the repair shop nor to the more invasive search that took place there. (*See* Baez Supp. Br. at 4, Pg. ID 175.) For all of the reasons stated above, the movement to the repair facility and the search there were lawful, and the Court is not reaching the issue of whether Baez consented to the movement and/or additional search of his vehicle. (As noted above, the Court does hold that Baez consented to the roadside search.)

moving the vehicle in order to search it after the drug dog alert established probable cause to support the search. *Id.* For the same reasons, the movement of Baez's car to the repair shop and the continued search of the car there did not violate Baez's Fourth Amendment rights.

## **<u>CONCLUSION</u>**

For all of the reasons stated above, **IT IS HEREBY ORDERED** that the Motion to Suppress (ECF #18) is **DENIED**.


s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  June 1, 2015


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 1, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113